485 So.2d 777 (1985)
Holland WILHITE
v.
STATE.
6 Div. 218.
Court of Criminal Appeals of Alabama.
April 23, 1985.
Rehearing Denied July 2, 1985.
*778 Robert T. Wilson, Jr., Jasper, for appellant.
Charles A. Graddick, Atty. Gen., and Rivard Melson, Asst. Atty. Gen., for appellee.
LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence on a trial by a jury under an indictment that charged in pertinent part as follows:
"Holland Wilhite, ..., did, with intent to cause serious physical injury to another person, cause serious physical injury to Rick Schultz, by hitting him with a night stick, in violation of Title 13A-6-21 of the Code of Alabama...."
Section 13A-6-21, entitled "Assault in the Second Degree", provides in pertinent part:
"(a) A person commits the crime of assault in the second degree if:
"(1) With intent to cause physical injury to another person, he causes serious physical injury to any person;
"(b) Assault in the second degree is a Class C felony, which by § 13A-5-6(a)(3) is punishable by imprisonment for not more than 10 years or less than 1 year and 1 day."
The court sentenced defendant (appellant) to imprisonment for eight years.

*779 I.
By the first issue presented in brief of counsel for appellant, he contends that "the trial court erred by not granting" timely made motions "based on insufficiency of the State's evidence." The following is correctly stated in appellant's brief:
"The State's case was based primarily on the testimony of Ricky Schultz, the Police Officer who was involved in the incident and Luke B. Wade, an unbiased witness who observed the incident."
Officer Schultz and Mr. Wade were the only eyewitnesses who testified as to the incident. Both were called as witnesses for the State. When the State rested its case, lengthy discussions were had among counsel for the respective parties and the trial judge in which it was strongly contended by defendant's counsel that defendant was entitled to a judgment of acquittal. After being assured by the trial judge that he would not grant defendant's motion for a judgment of acquittal, defendant's counsel announced, "The defense rests, Your Honor."
Officer Ricky Schultz testified that on April 24, 1982, he was working as Chief of Police for the town of Sipsey, that he had heard that there "had been fighting over there that day" at a residence, that he drove by there a couple of times that afternoon and while driving by "the third time" the following occurred:
"A. Yes, sir, I was flagged down.
"Q. Who flagged you down?
"A. Eddie Gann.
"Q. Where, if anywhere, did you pull over?
"A. I stopped directly in front of the house.
"Q. Did you pull off the street or were you on the street?
"A. I was on the street.
"Q. What happened after you pulled off?
"A. Eddie Gann walked up to the driver window of my car.
"Q. What happened at that time?
"A. He asked me if we were going to condemn the Harton residence [Referring apparently to the residence in front of which the automobile was stopped.]
"Q. What, if anything, did you say?
"A. I told him that it had been discussed.
"Q. What conversation ensued at that time?
"A. He asked me if we were going to condemn the Harton residence that summer. I said it had been discussed. And, he said, `Well, all we'll have to do is rebuild the back room in the house.' I said, `No, Eddie, first you will have to get some water and electricity back to the house.'
"Q. What happened at that time?
"A. Mr. Wilhite walked up from the rear of the vehicle.
"Q. And, what if anything, was he doing?
"A. He walked up to the rear of the vehicle and spoke to me and asked me, `Do you remember when you maced me for no reason?'
"Q. What, if anything, did you say?
"A. I said, `Holland, I remember macing you but I had a reason.'
"Q. Did he have anything in his hand at that time?
"A. Yes, sir.
"Q. What, if anything, did he have?
"A. A beer.
"Q. Was he on the street?
"A. Yes, sir.
"Q. What occurred next?
"A. He told me the best thing I could do was to get my ass out of there because he was in a bad mood.
"Q. And, what, if anything, did you say?
"A. I turned slightly in my seat and told him the best thing he could do was to get off the street with that beer in his hand.
"Q. Where was Eddie Gann at this time?
"A. Standing at the front part of my driver's door.
"Q. Did you see anyone else there?
"A. On the street with us?
*780 "Q. Yeah, either on the street or somewhere else?
"A. Yes, sir, there were three or four subjects at the front of the house.
". . . .
"Q. Now, after you told the defendant to get off the street with his beer, what if anything, did he say?
"A. He said, `Why don't you get out of the God damn car and make me.'
"Q. What did you do then?
"A. I opened the car door and stood up and as I stood up he struck me.
"Q. When you stood up out of the car, where was he?
"A. About where the passenger door would be on the left side of the vehicle.
"Q. So, he was behind you?
"A. To my left, yes, sir.
"Q. Behind you and to your left?
"A. Yes, sir.
"Q. Where, if anywhere, did he strike you?
"A. Up side of the face.
"Q. What, if anything, did he strike you with?
"A. His fist.
"Q. What did you do then?
"A. I struck him across the shoulder, the left shoulder with my night stick.
". . . .
"Q. What happened next?
"A. He took about a half step backwards and then threw the beer can at me.
"Q. And, what occurred next?
"A. I ducked to keep from being struck by the beer can and when I did that he tackled me around the waist.
"Q. Will you tell the ladies and gentlemen of the jury what happened after he tackled you around the waist, to the best of your ability?
"A. He tackled me around the waist and we spun along side the car to the rear of the vehicle wrestling, tripped and fell to the ground. When I hit the ground Holland grabbed my holster and my pistol with both hands trying to pull it free. I released my night stick and put my hand on the top of his hand to keep him from getting it out. I told him, `Holland, let go of my gun.' He said, `I've got more of the God damn thing than you do.' Well, I pried his fingers back, started prying his fingers back from my holster and when I did he released it and jumped back and I jumped to my feet, pulled my gun, and said, `All right, Holland, you're under arrest.' He had his hands in the air. I told him, `Holland, get on the ground.' He laid down on the ground face first spread out. I walked toward the side of him and reached back for my handcuffs. Well, my handcuffs were gone so I looked around to where we had been wrestling on the ground and my handcuffs were laying there on the ground. By the time I looked to where my handcuffs were and back Holland was coming up between my legs. I struck him on top of the head with the butt of my pistol but it had no effect whatsoever. He came up, tripped me and I fell to the ground again. He grabbed my gun and started trying to turn it in my direction toward me. I got my hands on top of his and pushed the gun away from me and spread his fingers off the end of the barrel. When his hands came free, he picked up the night stick and struck me across the forehead. He backed up a couple of steps and I was half sitting and half kneeling. I said, `Hold it right there.' He was turned sideways like he was going away from me. When I said, `Holland, hold it right there,' he turned back toward me. I had my gun on him pointed at him and I said, `Hold it right there Holland.' He started toward me and I fired.
"Q. Let me ask you, where were you when you fired?
"A. On the ground in the street.
"Q. What position were you in on the ground?
"A. Sitting or half sitting and half kneeling.
*781 "Q. At the time you fired, how far was Holland Wilhite from you?
"A. Five or six feet, maybe.
"Q. What, if anything, did he have in his hand?
"A. He had the night stick.
"Q. How did he have the night stick?
"A. In his hand.
"Q. In what position was it in his hand?
"A. In a carrying position.
"Q. Now, did these events take place in Walker County?
"A. Yes, sir."
The only premise in appellant's brief for his contention that he was entitled to a judgment of acquittal is to the effect that, under the undisputed evidence in the case, defendant was acting in self-defense. There are set forth in appellant's brief some instances of conflict between the testimony of Officer Schultz and the testimony of Mr. Wade in their testimony as to the details of what occurred. Appellant argues therefrom "sufficient evidence was not brought forth by the State to prove beyond a reasonable doubt and to a moral certainty that the Appellant was not acting in self-defense." We agree with the proposition relied upon by appellant that in a case, such as this, in which defendant raised the issue of self-defense and the evidence as to such issue is evenly balanced, the jury should acquit, and we follow what was held on the point by any of the authorities cited by appellant, including particularly Lester v. State, 40 Ala.Ct.App. 503, 121 So.2d 107 (1959), cert. denied, 270 Ala. 631, 121 So.2d 110 (1960), and specifically the following statement therein of Justice Coleman at 121 So.2d 112:
"A plea of self-defense in a criminal case is not an affirmative defense of confession and avoidance on which the defendant has the burden of proof as he does on such a plea in a civil case. Because he who asserts must prove, the party who takes the affirmative of an issue has the burden of proof. On trial of an issue of fact, if the evidence is evenly balanced, the party on whom the burden of proof rests must lose...."
Nevertheless, we cannot agree with appellant's deduction, from the principle stated, that it is for the trial court to determine on a jury trial whether the evidence is evenly balanced. Such an erroneous deduction is contrary to the principle that the credibility of witnesses is for the trier of facts, that any conflict between witnesses as to the facts is resolvable by the trier of facts. When a case is tried by a jury, it would be usurpation of authority on the part of the trial judge to take it upon himself to determine whether the evidence on a particular issue in favor of one party was evenly balanced with, or weighed more or less than, the evidence favorable to the other party. The trial court has a duty to submit such issue of fact, as well as other issues of fact, to the jury in a criminal case whenever there is substantial evidence in favor of the State on the decisive issue as to defendant's guilt, whether or not the defense of self-defense is involved, as shown by the following:
"Appellant argues that the jury's verdict was contrary to the weight of the evidence. It was undisputed that appellant shot and killed the deceased. The only contested issue was self-defense. Our examination of the record indicates that, while appellant may have been in peril justifying the use of force, there was a conflict in the testimony regarding whether he was free from fault or unable to retreat. Under these circumstances, the jury was justified in concluding that the killing did not fall within the legal definition of self-defense. Starling v. State, 398 So.2d 337 (Ala.Cr.App.), cert. denied, 398 So.2d 342 (Ala.1981). Conflicting evidence always presents a jury question and, provided the State establishes a prima facie case, this court will not disturb the verdict. McBryar v. State, 368 So.2d 568 [Ala.Cr. App.], cert. denied, 368 So.2d 575 (Ala. 1979) [Emphasis supplied]." Howard v. State, Ala.Cr.App., 417 So.2d 599, 602 (1982).
*782 The trial court was correct in its rulings to the effect that, under the evidence in the case, a jury question was presented as to whether defendant's conduct was sufficient to constitute self-defense. Defendant's first issue must be determined adversely to him.

II.
The court reporter's transcript shows the following at the end of the closing argument to the jury by counsel for the State:
"That's why we're here. We're here to tell the ... You're the conscience of the county and right now you are in your handsIt's in your hands to decide that the drunk dope addict had hit a police officer on the head
"MR. HIGGINS [Counsel for defendant]: I object, Your Honor, to the characterization of dope addict.
"THE COURT: Sustained.
"MR. HIGGINS: There has been no testimony that those were unlawful barbiturates. May have been medication.
"THE COURT: Sustained.
"MR. GUSTIN [Assistant District Attorney]: I submit if they had been medication he would have shown it to you.
"The Sheriff has done all he can do. The district attorney's investigator investigated this and did all he could do. I've done all I can do. It's up to you to decide.
"I submit the evidence shows you should find the defendant guilty of assault in the second degree.
"Again I thank you for your attention very much."
Thereupon, the trial court gave the jury a five minute recess, and while the jury was out of the courtroom the following occurred:
"MR. HIGGINS: We object to the comment made by the district attorney in closing argument referring to the defendant as a dope addict. We now request that the court will give a curative not a curative, an instruction to disregard that statement made by the district attorney. And, if the judge does give that instruction we would then move for a mistrial on the basis that no instruction or I should say rather than requesting instructions, we would state that it's so prejudicial. There is no evidence to that effect whatsoever. There's no way that instructions could cure that highly prejudicial and inflammatory statement that went to the jury. We had no opportunity to answer any charge such as that made by the district attorney.
"THE COURT: O.K. I would tell the jury to disregard it and ask them specifically if they can disregard that statement.
"Could you make your motion right now so we won't have to send them back out. And, we will consider it a timely motion.
"MR. HIGGINS: O.K. Even if the jury responds, Your Honor, that they could disregard that comment made by the district attorney, we would still request a mistrial on the basis of it being so highly inflammatory and prejudicial on a matter which is not before this court as there is no way that it could be disregarded and there is no way it could be cured by any instructions from the court whatsoever.
"THE COURT: I will deny the motion in anticipation that I will, in my own mind, be thorough in that instruction.
"MR. HIGGINS: I understand Your Honor.
"THE COURT: O.K.
"MR. HIGGINS: You are denying our motion for a mistrial?
"THE COURT: Yes, sir.
"MR. HIGGINS: Thank you, Your Honor."
Soon after the trial judge gave his oral charge to the jury and while he was in the process of reading some written charges to the jury, he stated to the jury the following:
"One other instruction. The district attorney during his closing argument made *783 some reference in his closing argument to the defendant's being a dope addict. There was an objection by the defense and I sustained the objection. I'm not instructing [sic, but which we believe is a typographical error and should be `now'] instructing you to completely disregard that statement. There is no evidence and there is no evidence in this record that that is correct.
"Is there any person on the jury that can not in their own mind disregard that statement? By your silence I assume this can be disregarded when you go into the jury room to deliberate, is that correct?
"All right."
It appears that the attorneys for the respective parties on appeal agree that the evidence to which the prosecuting attorney was alluding was in the testimony of a newspaper reporter, a witness called by the State, while referring to a conversation she had with defendant while he was confined as a patient in a hospital in Birmingham and was under treatment for the wound that he had received from the bullet shot from a pistol in the hand of Officer Schultz while they were scuffling as hereinabove recited. The testimony of the reporter, while testifying on direct examination, was in pertinent part as follows:
"Q. You can continue with what Mr. Wilhite told you on that occasion.
"A. Well, that's about really all that he said about the actual shooting. He talked a little about the events that led up to it.
"Q. What if anything did Holland Wilhite say about the events that led up to the shooting?
"A. He told me that he had been drinking and taking barbituates at the time. I guess heWell, I won't speculate on what he meant. That's what he said. He said, `I was cussing at him,' meaning the officer. He said, `He hit me.' Wilhite told me at that point that he grabbed the officer's night stick and hit him several times."
We agree with the trial court in its ruling in effect by the sustention of the objection of defendant's attorney to the characterization by State's attorney of defendant as a "dope fiend" and in its instruction to the jury that it should completely disregard the statement made by the prosecuting attorney. Even so, we are not persuaded that the trial court should have granted any motion for a mistrial. We do not have here an illustration of an instance in which an attorney purports to be stating a fact unsupported by the evidence, but one in which he endeavors to draw his conclusion as to what he deems can be inferred from the evidence itself. Although he was wrong in the conclusion he had apparently drawn, it did not constitute such ineradicable prejudice to the defendant that the jury could not have disregarded it, which we are persuaded it did, as instructed by the trial court.
In our opinion, the worst feature about the particular argument of counsel for the State is to be found in his statement immediately after the court had sustained the objection of defendant's attorney to the argument of State's Attorney that the barbituates "may have been medication." The statement was then made by State's counsel, "I submit if they had been medication he would have shown it to you." Appellant presents another issue as to this part of the comments considered under appellant's Issue II, and we will consider it when we shall have come to such additional issue presented by appellant on the point.

III.
The next issue presented by appellant is thus captioned in brief of his counsel:
"WHETHER THE TRIAL COURT ERRED IN NOT PERMITTING THE PISTOL INTRODUCED INTO EVIDENCE TO GO TO THE JURY DURING DELIBERATIONS."
There was considerable colloquy among the trial judge and the attorneys for the respective parties as to the pistol, physically handled by some in open court, seen by the jury and identified as the pistol that *784 was in the possession of Officer Schultz on the occasion of the alleged assault. While the jury was excused from the courtroom, the following occurred:
"COURT: Is the pistol going to be introduced before we get to anything else?
"MR. HIGGINS: Into evidence?
"THE COURT: Uh-huh.
"MR. HIGGINS: No, it has not.
"THE COURT: I say, do you expect it to be?
"MR. HIGGINS: With the stipulation that we had already discussed, if we admit it, it's going to be admitted with the stipulation that he be able to take it back. It will become a part of the record and he at the same time will be able to take it after the trial.
"MR. GUSTIN: And, during the trial.
"COURT: Right. I believe the stipulation will cover it. Read the serial number into the record.
"MR. GUSTIN: Colt Trooper MK 3 357 Magnum Serial No. J55513.
"THE COURT: Let the record reflect that Chief Schultz needs this in his possession for work purposes and it is stipulated by both parties that he can have this in his possession during the trial, after the trial and on appeal.
"I guess we could substitute a picture as far as that's concerned, should there be an appeal.
"Is that all right?
"MR. HIGGINS: Yes, Your Honor.
"THE COURT: O.K. we were at the ..."
The colloquy among the trial judge and attorneys for the respective parties continued for six or seven pages more, and then the following occurred:
"MR. HIGGINS: Could we go ahead and offer this in [the reference is apparently to the pistol].
"MR. GUSTIN: Yes, go ahead and put it in with the stipulation that it is to be in his [apparently referring to Officer Schultz] custody.

RECESS"
There does not seem to be any disagreement between the parties on appeal as to the contention of appellant that the pistol was not in the possession of the jury during its deliberations. Some time after the case had been submitted to the jury for the jurors to deliberate and endeavor to return a verdict, the following occurred, out of the hearing of the jury:
"MR. HIGGINS: For the record, we have learned that the pistol which was marked State's Exhibit # 21 which the reporter will supply the number for, .357 Magnum identified as being the police gun used by officer Schultz at the time the incident involved in this case occurred. We understood that the conversation that took place between the district attorney and the defendant's counsel was a stipulation of that weapon into evidence and that it was being received into evidence on the basis of that stipulation. We have learned now that the gun was not stipulated into evidence as we felt and the court has not agreed with that exhibit going back to the jury room and we object and request the court to allow that weapon into the jury room for deliberation.
"MR. GUSTIN: Note that the jury has been deliberating for several hours and if it was offered into evidence it would be in the custody of the police officer, saying that was the only gun he had we did not want to allow him not to have use of the gun for that period of time it would be in the court. It was my understanding the gun was never introduced.
"COURT: The court rules the gun was never introduced into evidence.
"MR. HIGGINS: We are moving that the gun be forthwith delivered to the jury as a proper piece of evidence in this case.
"MR. GUSTIN: The state objects.
"COURT: Denied."
It seems that there was some misunderstanding among the lawyers and the trial judge as to whether the pistol was ever admitted in evidence. We feel confident, *785 however, that the trial court was not in error in denying defendant's belated motion "that the gun be forthwith delivered to the jury as a proper piece of evidence in this case" and that no substantial injury was caused the defendant by the trial court by any of its rulings as to the matter.

IV.
The following is the caption of the fourth issue presented in brief of counsel for appellant:
"WHETHER THE COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR A NEW TRIAL BASED ON THE STATE'S COMMENT TO THE APPELLANT'S FAILURE TO TESTIFY."
By this issue, appellant's attorney reverts to a part of his discussion of his Issue I, particularly the last sentence of the comment of the Assistant District Attorney, "I submit if they had been medication he would have shown it to you." The transcript shows that the quoted statement was made within the last few sentences of the rebuttal argument to the jury by State's counsel. The transcript further shows that no objection was made by defendant's counsel to the argument. In the brief of counsel for appellant, he attempts to explain his failure to object to the last quoted sentence of argument of counsel for the State, by stating, "During the course of Counsel's objection, Counsel later learned that the Assistant District Attorney turned to the Jury and stated in such a way that Counsel was unable to hear that `if they had been medication, he would have shown it to you'." Counsel for appellant does not state why defendant's counsel "was unable to hear" the statement of State's counsel that he claims constituted a "comment to the appellant's failure to testify." We believe not only that the failure of defendant's counsel to object, or in some other manner invoke a ruling of the trial court on the propriety of such comment promptly after the comment was made disentitles him to favorable determination by this Court at this time, but also that the comment cannot be reasonably construed as "a direct comment on the Defendant's failure to testify in his own behalf." Such a construction of the language would be anachronistic and would be inconsistent with the likely antecedent of the personal pronoun (he) in the quoted statement of counsel for the State. If treated as appellant attempts to treat it, the statement would have been anachronistic in that it was made before the State had rested its case and before defendant had ever been given an opportunity to testify. It appears to us that the statement made by State's counsel was in reply to what defendant's counsel had just said and that the antecedent of "he" was defendant's attorney, not the defendant himself. We disagree with the contention of appellant's attorney that the sentence was a comment upon defendant's failure to testify and determine appellant's contention in this respect adversely to him.

V.
This issue is thus stated in appellant's brief:
"WHETHER THE COURT ERRED IN FAILING TO GIVE APPELLANT'S REQUESTED CHARGE NUMBER 26 AFTER THE COURT HAD RULED PRIOR TO FINAL ARGUMENT THAT THIS REQUESTED CHARGE WOULD BE GIVEN."
The gist of appellant's argument is stated in the following paragraph of brief of counsel of appellant:
"The Appellant contends that once the Court gave its ruling that jury charge 26 would be given as requested and Counsel for Appellant had argued to the jury on the basis of that ruling, it was error for the Court to then refuse to give that requested jury charge."
Appellant relies upon Rule 14 of Alabama Rules of Criminal Procedure in support of his contention as to this issue. The record proper shows that defendant's requested charge No. 26 was marked "refused" and as refused signed by the judge presiding on the trial of the case. The charge is as follows:

*786 "26. The Court charges the jury that the Defendant had the right to use reasonable force to defend himself against an unlawful arrest of law enforcement officers."
At the conclusion of the oral charge of the court to the jury, the parties were given an opportunity to make any objections or exceptions to the court out of the presence of the jury, at which time the following, inter alia, occurred, just after counsel for defendant had objected "to the court's refusal to give defendant's requested charge # 23," as well as defendant's requested charges No. 24 and No. 25:
"[MR. HIGGINS]: The court is going to give # 26 in some amended form or have you decided against that?
"COURT: I refused it initially. I don't believe we need to go back and set a precedent of going back and correcting it.
"MR. HIGGINS: O.K. We would object to the court's failure to give the requested charge # 26. We were informed prior to argument that that charge would be given and it was not given and it was not adequately covered in the court's oral charge.
"In addition we would also object ...
"COURT: Let me say for the record that # 26 in the opinion of the court, approaches commenting on the evidence and that is why it was refused. That the defendant had the right at the time and etc.
"MR. HIGGINS: In addition, Your Honor, we have some objections to the actual oral charge of the court.
"We object to the characterization that the court made.
". . . ."
We disagree with appellant's counsel as to any contention by him that he was led to believe by action taken or statements made by the trial court prior to the arguments of counsel to the jury that the trial court would give defendant's requested charge No. 26. Furthermore, we are of the opinion that defendant was not entitled to have the court give such charge to the jury. Appellee's attorney states that the charge was ungrammatical in the use of the preposition "of" instead of the preposition "by." We think that thereby the charge was somewhat ambiguous. Furthermore, we are not convinced that the conduct of the law enforcement officer, as testified to by either of the eyewitnesses, afforded an inference that the assault by defendant upon the law enforcement officer was in the course of any effort of the officer to make "an unlawful arrest." As stated in Craig v. State, Ala.Cr.App., 410 So.2d 449, 454 (1982):
"We have further reviewed appellant's requested charges which were refused by the trial court and find that they were either ungrammatical, abstract or incorrect statements of the law. Harris v. State, 358 So.2d 482 (Ala.Cr.App.), cert. denied, 358 So.2d 487 (Ala.1978); Hudson v. State, 335 So.2d 208 (Ala.Cr.App.), cert. denied, 335 So.2d 211 (Ala.1976)."

VI.
By a final issue presented in appellant's brief, he contends that the cumulative effect of the errors committed in the trial of the case "created such an ineradicable prejudice and bias against the appellant" that he was deprived of a fair and impartial trial. Consistently with what we have already said with reference to each of the previously considered issues presented in brief of counsel for appellant requires the conclusion that this particular issue also should be determined adversely to appellant.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.