581 So.2d 1136 (1990)
Jeffrey Powell KIRBY
v.
STATE.
5 Div. 595.
Court of Criminal Appeals of Alabama.
June 15, 1990.
As Corrected on Denial of Rehearing September 21, 1990.
On Return to Remand December 28, 1990.
Rehearing Denied May 31, 1991.
*1138 Michael D. Cook, Lanett, for appellant.
Don Siegelman, Atty. Gen., and Robin Blevins, Asst. Atty. Gen., for appellee.
McMILLAN, Judge.
The appellant was indicted for sodomy in the first degree and for sodomy in the second degree; the two sodomy cases were consolidated for trial. He was acquitted of sodomy in the second degree but was convicted of sodomy in the first degree and was sentenced to 15 years' imprisonment.
The appellant argues that the prosecutor failed to disclose exculpatory material which he was entitled to pursuant to a discovery order, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the United States Constitution. The alleged exculpatory material was statutorily privileged under § 34-26-2, Code of Alabama (1975), as a confidential communication between a licensed psychiatrist and his client.
The record indicates that, prior to trial, the State requested that a physician, who had previously examined the youngest of the two victims, be exempt from the rule so that he could observe the two victims' testimony. The prosecutor stated that he wished the physician to be able to testify concerning the "generally accepted symptoms" of child abuse and to draw conclusions concerning the present victims from observations he would make while watching the victims testify, in addition to his earlier observations of the one victim. The prosecutor further requested that the appellant be instructed to refrain from asking the physician any questions concerning statements that the youngest victim had previously made to the physician. Defense counsel then objected to the prosecutor's requested limitation of the appellant's cross-examination and, further, stated that "if [the prosecutor is] going to put the doctor on and this child has made statements to him regarding this incident, particularly that this did not occur or anything to that nature and particularly if his notes or anything contain exculpatory material in them, I should have already had them." The prosecutor responded by saying that he would not be entitled to such information because "only a patient can waive the psychologist-psychiatrist privilege" and therefore the information would not be admissible in court anyway. Defense counsel responded, "How am I going to know if this doctor has in his notes if this child has told him about sexual abuse from other people at other times." The trial court stated that he would make a decision later during the trial.
Subsequently, after the State rested its case, defense counsel noted that the State had subpoenaed the doctor and had "obviously... had an opportunity to examine that doctor's files" and said that if the State was aware of any exculpatory material, the defendant was entitled to the information. The following transpired just prior to the resting of the State's case and the commencing of the defendant's case:
"[DEFENSE COUNSEL]: And I would state that, obviously, the State of Alabama has had an opportunity to examine that doctor's files. I amif there is anything exculpatory in those files, I am entitled to have that information. They've chosen not to put him on, for some particular or specific reason, and theif they know that this young man never mentioned [the appellant] to him, as he testified, if his notes so indicate, I think I'm entitled to be furnished that information before I proceed with my defense.
"[PROSECUTOR]: I don't think so.
"THE COURT: Does the State have in its possession anything from any expert witness, a physician, that would be exculpatory to the defendant?
"[DEFENSE COUNSEL]: As to impeachment purposes, also.
"THE COURT: Impeachment for who?
"[DEFENSE COUNSEL]: Impeachment of the young man if he never told him.
"THE COURT: That would be in the nature of being exculpatory.
"[DEFENSE COUNSEL]: Right.

*1139 "[PROSECUTOR]: I have never received any report from Dr. Becker. I have only spoken to him. There is a tactical reason that we chose not to call him because, as we discussed earlier, when I brought this up initially at the very beginning of the trial, the court stated that he would allow defense counsel to go into the statements made by the victimalleged victim in this case made to the doctor. And I chose not to put the doctor on the stand simply so that I would not waive the psychologist-psychiatrist privilege client privilege as contained in the statute. So I don'tI have not even looked at the notes that the doctor brought with him. I have spoken with him and I know what'swhat I think he might say. But my understanding of that privilege is that if I don't put some type of affirmative testimony on the stand, that's not waived unless the client waives it. And to my knowledge
"THE COURT: That's true.
"[PROSECUTOR]: To my knowledge, the client has not waived that privilege.
"[DEFENSE COUNSEL]: I'd like to be heard because if itsifit sounds to me like that if I was allowed to cross-examine this man, that there would be exculpatory information that would be revealed because he has stated that he does not want me to be able to ask him questions because of the answers that he expects from oral conversations with him. Now, I would like a minute to look at thatis this man a psychologist or psychiatrist or what are his qualifications? Not knowing that, I don't know what his privilege is.
"[PROSECUTOR]: I don't know if it's exactly a psychologist or psychiatrist. I always get them confused.
"[DEFENSE COUNSEL]: If he's a counselor, you know, there may or may not be a privilege and I would like to know what the man's qualifications are.
"THE COURT: Do you have in your possession any sort of written statements or any written findings from this doctor?
"[PROSECUTOR]: No, sir, I do not.
"THE COURT: Have you complied with the order for discovery that's been in this file since way back yonder?
"[PROSECUTOR]: Yes, sir. I have given everything in the State's possession to [defense counsel] that he is entitled to under the Rules of Criminal Procedure. I have not received any written report from the doctor.
"THE COURT: All right, sir. The State has rested.
"[DEFENSE COUNSEL]: And the doctor is not equally available to me, correct?
"THE COURT: Well, you can subpoena him if you want to.
"[DEFENSE COUNSEL]: What I'm saying is I can'tif I put him on the stand, the privilege cannot be waived.
"THE COURT: It's my understanding of the law that either the client or the psychologist-psychiatrist can assert the privilege. Only the client can waive the privilege. The privilege is there for the benefit of the client.
"[DEFENSE COUNSEL]: So the psychologist or psychiatrist can't assert it?
"THE COURT: Yes, sir, he can assert it.
"[DEFENSE COUNSEL]: What I mean is if the client is the only one that can waive it
"THE COURT: That's right.
"[DEFENSE COUNSEL]:then the psychologist couldn't waive it himself?
"THE COURT: No, sir, he can'the can't waive it. He can't divulge anything that would be privileged between him and his client. He can assert the privilege but he can't waive it. Only the client can waive it. That's the case law that I looked at.
"[DEFENSE COUNSEL]: Since he cannot waive it, and I am to understand that his client would not be waiving it [sic].
"[PROSECUTOR]: That's the reason I did not put the doctor on the stand.
"[DEFENSE COUNSEL]: Okay.
"[PROSECUTOR]: I did not want to waive the privilege of a seven-year-old child.
"THE COURT: That was the purpose of requesting, I would assume, to allow this *1140 man to sit in a courtroom and observe them.
"[PROSECUTOR]: Yes, sir.
"THE COURT: So that he would have something
"[DEFENSE COUNSEL]: In addition.
"THE COURT:inwell, something that he could testify to in the presence of the defendant without waiving or having to assert the privilege, because he has an obligation to assert the privilege.
"[PROSECUTOR]: That's correct."
(Emphasis added.)
The United States Supreme Court has held that, where a juvenile offender's records were statutorily privileged, the defendant's constitutional rights to confrontation outweighed this statutory privilege. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). However, this court has noted that the United States Supreme Court's holding in Davis was "`carefully limited and [was] not intended to mandate a sweeping constitutional incursion into state evidence law.'" Thornton v. State, 527 So.2d 143, 144 (Ala.Cr.App.1987), cert. denied, 527 So.2d 146 (Ala.1988). In the present case, the appellant argues that, under his rights to a fair trial and pursuant to the due process clause of the Fourteenth Amendment, he was entitled to the disclosure of any exculpatory information told to the psychiatrist or psychologist by the victim and known to the prosecutor, upon the granting of the discovery order. The prosecutor maintained at trial that he had not violated the discovery order because, he said, he had no written report from the physician. However, it is unclear whether the prosecutor became aware of any exculpatory information during his oral conversation with the physician. Regarding the appellant's right to discovery of exculpatory information, there is no rule limiting the discoverable information to information in written form.
Under the other statutory privileges, the marital communication privilege and the attorney-client communications privilege, the relaying of the "privileged" communication to a third party would have waived the information's privileged status. See 8 Wigmore, Evidence §§ 2326, 2339 (McNaughton rev. 1961) and cases cited therein. However, there is an exception under the physician-client privilege, whereby a third party's testimony must still be suppressed. 8 Wigmore, Evidence § 2381 (McNaughton rev. 1961):
"As with the other privileges ..., the [physician-patient privilege] is designed to forbid compulsory disclosure by that person to whom the confidence was extended. It therefore does not exempt a third person who overheard the communication (with or without the knowledge of the patient) from testifying to it unless the third person is an agent of the physician. But, by analogy to the other privileges, this privilege should be effective to suppress testimony by a third person who obtained his information as a result of a voluntary and unauthorized disclosure by the physician."
Id. (Emphasis in original.) (Footnotes omitted.) See also Uniform Rules of Evidence, Rule 27(2)(c)(iii). If the prosecutor's statements to the court in the present case that the information concerning the younger victim's statements to the physician, which the physician reported to the prosecutor, was relayed as the result "of a voluntary and unauthorized disclosure by the physician," the privilege remains intact, despite the prosecutor's knowledge of the communication.
In Alabama, where a party's right of discovery has come into conflict with a statutorily privileged communication, the courts have decided on a factual basis of each particular case. See Ex parte Rudder, 507 So.2d 411, 415 (Ala.1987) (wherein the public interest in promoting a full and thorough discovery in a civil case yielded to a party's psychiatrist-patient privilege where the psychiatrist filed suit against a television station and investigative reporter for libel and invasion of privacy). See also Harbin v. Harbin, 495 So.2d 72, 74 (Ala. Civ.App.1986) (wherein the Alabama Court of Civil Appeals held that the psychiatrist-patient privilege would not prevent the admission *1141 of a mother's hospital records in a child custody modification case).[1]
The courts in foreign jurisdictions seem to rely heavily on the wording of the state statute establishing the privilege, in determining whether the defendant's right to confrontation or right to exculpatory material is outweighed by the privilege. See, e.g., People v. Foggy, 149 Ill.App.3d 599, 102 Ill.Dec. 925, 930-31, 500 N.E.2d 1026, 1031-32 (1986), affirmed, 121 Ill.2d 337, 118 Ill.Dec. 18, 521 N.E.2d 86 (1988), cert. denied, 486 U.S. 1047, 108 S.Ct. 2044, 100 L.Ed.2d 628 (1988). In Advisory Opinion to the House of Representatives, 469 A.2d 1161 (R.I.1983), the Supreme Court of Rhode Island wrote in answer to questions from the House of Representatives concerning the constitutionality, under the Sixth Amendment, of proposed statutes which would make communications between a sexual assault victim and his or her counselor privileged. The court determined that a proposed statute which would make all such communications privileged would violate federal and state constitutional rights. On the other hand, the Rhode Island Supreme Court determined that a proposed statute which would provide for in camera hearing, to permit the determination of whether the known information would be exculpatory, would insure that no sensitive or irrelevant evidence was presented to the trier of fact and thereby strike the requisite balance between an accused's constitutional rights at trial and a sexual assault victim's need for confidentiality. See also United States v. Nixon, 418 U.S. 683, 703-713, 94 S.Ct. 3090, 3105-3110, 41 L.Ed.2d 1039 (1974) (wherein the Court held that the confidentiality of presidential communications must yield to the constitutional duty of the judicial branch "to do justice in criminal prosecutions," especially where the production of the confidential presidential communications would be for an in camera inspection under the court's protection).
In the present case, because it is unclear whether the prosecutor was made aware of exculpatory material through his conversation with the physician and because the appellant would, under Brady v. Maryland, supra, be constitutionally entitled to such information, this cause is remanded to the trial court for an in camera determination as to whether the prosecutor had knowledge of exculpatory information, through his conversation with the physician, which was material to the question of the appellant's guilt. If the trial court finds that the prosecutor did fail to disclose material and exculpatory information, then the appellant is entitled to a new trial. "This conclusion protects the fundamental idea that there is a `need to develop all relevant facts in the adversary system * * *. To insure that justice is done, it is imperative to the function of courts that conclusory process be available for the production of evidence needed either by the prosecution or by the defense.'" Advisory Opinion to the House of Representatives, supra, at 1166, quoting United States v. Nixon, 418 U.S. at 709, 94 S.Ct. at 3108.
The trial court is directed to file with this court a written return within 90 days of the date of this court's certificate of judgment in this case, informing this court of its determination.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.

ON RETURN TO REMAND
McMILLAN, Judge.

I
This cause was remanded to the trial court for an in camera determination as to whether the prosecutor had knowledge of exculpatory information, through his conversation with the youngest victim's physician, which was material to the question of the appellant's guilt. A hearing was held on this matter by the trial court. Thereafter, the trial court issued a written in *1142 camera determination, finding that the prosecutor "had no information within his knowledge or case file that would have been or is presently exculpatory as to appellant's guilt" in this case. After reviewing the transcript of the hearing, we find no abuse of discretion by the trial court. Gibson v. State, 555 So.2d 784, 790-91 (Ala.Cr.App.1989). See also Neely v. State, 469 So.2d 702 (Ala.Cr.App.1985).

II
The appellant argues that the trial court erred in ordering that the two indictments against him be joined for purposes of trial. In the present case, the appellant was indicted for the offense of sodomy in the first degree, on the basis of his allegedly engaging in deviant sexual intercourse with J.M., who was less than 12 years of age, in violation of § 13A-6-63, Code of Alabama 1975. He was also indicted for sodomy in the second degree, on the basis of his allegedly engaging in deviate sexual intercourse with R.N., who is the stepbrother of J.M. and who was less than 16 years of age and more than 12 years of age, in violation of § 13A-6-64, Code of Alabama (1975).
The prosecutor made a motion for consolidation of the offenses, stating that "there is at least one act involving both boys [victims] at the same time." The prosecutor argued that the consolidation would be proper because the crimes were of the same or a similar character, were of the same conduct or were connected in their commission, and were part of a common plan or scheme. He cited Rule 15.3, Alabama Temporary Rules of Criminal Procedure, and Wright v. State, 516 So.2d 941 (Ala.Cr.App.1987) (wherein this court held that two attempted rape charges were properly consolidated for trial, although they involved two different victims, because they were of the same or a similar character and appeared to be part of a common scheme, design, or plan). The prosecutor further argued that the crimes would properly be consolidated because evidence of each offense would have been admissible in the trial of the other, had separate trials been held. C. Gamble, McElroy's Alabama Evidence, § 69.01(6) (3d ed. 1977). Therefore, he concluded that the consolidation would be proper and that the appellant would not suffer any prejudice. Crawford v. State, 485 So.2d 391, 394-95 (Ala.Cr.App.1986).
Defense counsel responded by denying that the State would be allowed to present evidence of each offense at the trial of the other. He further denied that the offenses were related actions.
The State presented evidence that the victims were step-brothers and that, on one occasion, they were both present in the appellant's car when the appellant drove down a dirt road and parked and engaged in deviant sexual behavior with both of the victims, according to the older victim. The younger victim also testified that, on occasions, the appellant would sleep in his bed, when the appellant spent the night at [the victims'] family's trailer and that often when he would do so they would engage in deviate sexual behavior. The older victim also testified that the appellant would often stay at the family's trailer and would sometimes sleep in the bed with the younger victim.
Rule 15.3, Alabama Temporary Rules of Criminal Procedure, reads:
"Two or more offenses may be joined in an indictment, information, or complaint, if they:
"(i) are of the same or similar character; or
"(ii) are based on the same conduct or are otherwise connected in their commission; or
"(iii) are alleged to have been part of a common scheme or plan."
These offenses are clearly of the same or similar character, were based on the same conduct, and were part of a common scheme or plan. Furthermore, as noted by the prosecutor, evidence of each offense would have been admissible at the trial for the other, had there been separate trials. Bowden v. State, 538 So.2d 1226 (Ala.1988); Watson v. State, 538 So.2d 1216 (Ala.Cr. App.1987), affirmed, Bowden v. State, supra; *1143 Reeves v. State, 570 So.2d 724 (Ala. Cr.App.1990).
The decision of whether to consolidate offenses for trial rests in the sound discretion of the trial court and should be reversed on appeal only where the appellant has suffered such prejudice from a joint trial that it may be said that the trial court abused its discretion. King v. State, 518 So.2d 880 (Ala.Cr.App.1987). The appellant suffered no prejudice from the joint trial and we find no abuse of discretion by the trial court.

III
The appellant argues that the trial court erred by denying his motions for a judgment of acquittal, in that he claims, the State failed to provide sufficient evidence on the charge of sodomy in the first degree and failed to prove proper venue. He further argues that the jury verdicts were inconsistent. The appellant argues that, because the youngest victim testified that, during the occasion of the alleged sodomy in the parked vehicle, the appellant engaged in deviate sexual behavior with the older brother, but not with himself, the State's evidence was insufficient. However, the older victim testified that the appellant engaged in deviate sexual behavior with the younger victim, as well as himself. The younger victim testified that he was sexually abused by the appellant on other occasions. The credibility of witnesses is a matter for the trier of facts, and any conflict in the testimony of witnesses, as to the facts, is a matter to be resolved by the trier of facts. Wilhite v. State, 485 So.2d 777, 781 (Ala.Cr.App.1985), affirmed, 485 So.2d 787 (Ala.1986). The trial court properly denied the appellant's motion for acquittal, because the evidence presented by the State, and apparently believed by this jury, was sufficient to sustain the conviction. Parrish v. State, 494 So.2d 705 (Ala. Cr.App.1985).
The State presented sufficient circumstantial evidence of venue, to make the issue a matter for the jury. Creech v. State, 508 So.2d 302, 303-04 (Ala.Cr.App. 1987). There was testimony that the appellants resided in a trailer, belonging to their mother, in Chambers County. Thus, the incidents that occurred when the appellant spent the night at the trailer occurred in Chambers County. Moreover, there was testimony from the victims that the incident in the appellant's car occurred on the way home from Opelika, Alabama, close to Highway 50. An investigator with the Chambers County Sheriff's Department testified that, after talking to the victims at their residence in Chambers County, he believed the incident "evidently took place in Lee County." However, he further testified that the victims did not tell him exactly where the incident took place. He was then asked if he ultimately determined where this offense allegedly occurred and he responded, "Yes, sir, in Chambers County."
"`The jury has the option of believing a witness or not believing a witness who testifies as to venue. Apparently the jury believed the witness in the present action, and, therefore, no error existed as to the venue ... issue presented by appellant.' Agee v. State, 465 So.2d 1196, 1204 (Ala.Cr. App.1984)." Creech v. State, supra, at 303.
"`"In a criminal case, proof of venue is sufficient if it can be reasonably inferred by the jury from the facts and circumstances adduced. Segars v. State, 409 So.2d 1003 (Ala.Cr.App.1982). Venue need not be established solely by direct evidence. Evidence from which it is inferable is sufficient. Dolvin v. State, 391 So.2d 666 (Ala.Cr.App.1979), aff'd, 391 So.2d 677 (Ala.1980); Stokes v. State, 373 So.2d 1211 (Ala.Cr.App.), cert. denied, 373 So.2d 1218 (Ala.1979)."`"
Creech v. State, 303-04, quoting Lewis v. State, 461 So.2d 9, 11 (Ala.1984).
The appellant argues that the jury verdicts were inconsistent, as he was convicted of sodomy in the first degree, for sexually assaulting the younger victim, but was found not guilty on the charge of sodomy in the second degree, for sexually assaulting the older victim. Initially we note that "inconsistent verdicts" is not a proper ground for reversal under Alabama law. Hammond v. State, 497 So.2d 558, *1144 562-64 (Ala.Cr.App.1986); McClellan v. State, 484 So.2d 1150, 1152-53, 152-53 (Ala.Cr.App.1985)." Weaver v. State, 564 So.2d 1007 (Ala.Cr.App.1989). See also Smelcher v. State, 520 So.2d 229, 232 (Ala. Cr.App.1987). Moreover, the jury verdicts were not inconsistent; the jury could have found that the appellant committed the sexual assaults on the younger victim, but not on the older victim.
AFFIRMED.
All Judges concur, except BOWEN, J., who dissents with opinion.
BOWEN, Judge, dissenting.
In Part II, it is far from clear that the offenses were properly joined, because, as the majority asserts, under Bowden v. State, 538 So.2d 1226 (Ala.1988), "evidence of each offense would have been admissible at the trial of the other, had there been separate trials."
The Rule 15 joinder provisions for offenses which are of the "same or similar character" or offenses which are "part of a common scheme or plan" sound very much like the "identity" exception to the collateral crimes exclusion rule. In Bowden, the Supreme Court reiterated that identity must be genuinely at issue before the "identity exception" can be invoked. 538 So.2d at 1234.
Appellant apparently did not defend on the basis that someone else committed the acts; he seems, instead, to have "merely denied that the acts ever occurred." Anonymous v. State, 507 So.2d 972, 975 (Ala.1987). Thus, there does not appear to be "a real and open issue as to the ... identity" of the person who allegedly sodomized the stepbrothers in the instant case. Bowden, 538 So.2d at 1234.
In Bowden, the Supreme Court also indicated that the "motive" exception to the collateral crimes rule did not authorize admitting evidence of the abuse of two siblings by their parent unless the parent had been charged with incest in addition to the rape or sexual abuse offense. The Bowden court did leave open the following possibilities for admitting evidence that more than one child in the accused's household had been sexually abused:
"It may well be, when the third party against whom the defendant is claimed to have committed a collateral sexual offense is the defendant's child, that collateral offense evidence is more relevant in proving the material `other purpose(s)' for which it is offered in a sex crime prosecution than would be evidence of other third party offenses. This of course depends upon (1) the offense(s) charged; (2) the circumstances surrounding the offense(s) charged and the collateral offense(s); (3) the other collateral evidence offered at trial, and (4) the other purpose(s) for which it is offered. Thus, ... the analysis must be case by case."
Bowden v. State, 538 So.2d at 1237-38.
The instant indictments may have been properly joined, but not for the reasons stated in the majority opinion. The opinion does not undertake the "case by case analysis" mandated by the Bowden five-part inquiry.
In Part III, the majority observes, "Proof of venue is sufficient if it can be reasonably inferred by the jury from the facts and circumstances adduced," Opinion at 1143. Here, the State elicited a mere conclusion, rather than "the facts and circumstances," when the prosecutor asked the sheriff's investigator whether he "ultimately determined where this offense occurred," and the investigator answered, "Yes, sir, in Chambers County."
NOTES
[1] Clearly in these civil cases, the defendant's constitutional right to exculpatory material did not enter into the balancing test.