850 So.2d 370 (2002)
D.P.
v.
STATE of Alabama.
CR-00-1564.
Court of Criminal Appeals of Alabama.
March 22, 2002.
*371 W. Gregory Hughes, Mobile, for appellant.
William H. Pryor, Jr., atty. gen., and Cecil G. Brendle, Jr., asst. atty. gen., for appellee.
SHAW, Judge.
The appellant, D.P., was convicted of rape in the first degree, a violation of § 13A-6-61(a)(1), Ala.Code 1975, and of burglary in the first degree, a violation of § 13A-7-5, Ala.Code 1975. The victim was his ex-wife, T.H. The appellant was sentenced to 20 years' imprisonment for each conviction, the sentences to run concurrently. The sentences were split, and he was ordered to serve a total of five years in confinement followed by five years on probation.
At trial, T.H. testified that she and the appellant had been married for approximately seven years, from 1989 until 1996; that their divorce had been amicable; and that the appellant often visited her children (one of whom was also the appellant's child) at her mobile home after the divorce, but that the appellant did not have a key to the mobile home. T.H. testified that on the night of January 20, 2000, she locked the doors to the mobile home and went to bed at approximately 9:30 p.m. Sometime later, she said, she was awakened when she heard someone entering the front door and then felt someone getting into bed with her. T.H. said that, at first, she thought it was her boyfriend, who lived with her, but that the person called her by her middle name, and she realized that it was the appellant because only the appellant called her by her middle name. At that point, T.H. said, she got out of bed, and the appellant grabbed her and pushed her back down on the bed. T.H. testified that she and the appellant struggled for about 15 minutes before he finally overwhelmed her and raped her. The appellant's defense at trial was consent.
The appellant raises five issues on appeal; however, because of our disposition of this case, we need address only his first issue at this time. The appellant contends that the trial court erred in denying his motion to compel production of T.H.'s mental-health records. The appellant argues that although the records are privileged by § 34-26-2, Ala.Code 1975,[1] they were essential to his attack on T.H.'s credibility and, he says, the trial court's denial of his motion to compel production of the records denied him the right to confront his accuser.
Before trial, the appellant filed a written motion to compel the production of T.H.'s mental-health records. The appellant argued that T.H. had been an outpatient at a *372 mental-health facility approximately six months before the incident giving rise to the present charges occurred and that the records from that treatment may have contained information relevant to his defense of consent. After a hearing, during which T.H. asserted her privilege to keep the records confidential, the trial court denied the motion. The appellant then filed a written motion to reconsider the earlier denial of his motion to compel, and the trial court held another hearing. During that hearing, the following occurred:
"THE COURT: So, do you [prosecutor] have a position?
"[Prosecutor]: I do, sir. I would have no objection if the defendant would allow me to subpoena any mental health records and the marriage counsel records, any therapy records, any records from hospitals, inpatient or outpatient since 1995.
"[Defense counsel]: Judge, they don't have a Sixth Amendment right to confront the defendant and
"THE COURT: Well, but I mean it seems in fairness that you do one, you do the other.
"[Defense counsel]: Well, Judge, I'm not going to agree to that. That's
"THE COURT: Well, then I'm not going to grant your motion. That's my discretion.
"[Defense counsel]: Well, Judge, it's not unbridled. If I could have [a] second to talk to my client and see what he wants to do.
"....
"THE COURT: And you say you want to use them to attack her credibility? Well, what do you want to use them for?
"[Defense counsel]: To attack her credibility, Judge, but again, I haven't seen the records and without seeing them
"THE COURT: Furthermore there is nothing in the records to suggest that DIF [sic], that's the person who was suffering from an emotional mental defect that would have materially affected the accuracy of his testimony or affected his ability to know and correctly relate the truth to justifywell, you know, I guess I have to look at them, but at this point I'm going to deny your motion. When did you file your motion?
"[Defense counsel]: Judge, my subpoena was filed probably a month ago. I mean this has just beenI filed my original motion to compel probably three weeks ago and then the clerk set it for last
"THE COURT: When was arraignment? Well, it might be that I should look at them, but at this point I can't tell. It looks to me like both of you want to use records against each other's credibility and you can't concede that she has the right to look at your records and you say it's a different issue. But I'm going to deny it."
(R. 11-14.) The record does not reflect that the trial court ever looked at the records to determine whether they would be helpful to the defense in attacking T.H.'s credibility.
In addressing an identical issue in Schaefer v. State, 676 So.2d 947 (Ala.Crim. App.1995), this Court stated:
"The appellant appeals, raising nine issues. However, at this time, we address only the issue whether the trial court committed reversible error in denying the appellant's motion to produce [the victim's] psychiatric records and the records pertaining to [the victim] in the files of the Alabama Department of Human Resources. The appellant contends that [the victim] is a `habitual liar' with a *373 history of mental instability and that his records were necessary for purposes of cross-examination to impeach his credibility. The trial court held, and the state now contends, that the records were privileged and that their production for confrontation purposes was prohibited by statute.
"The records are privileged pursuant to §§ 12-15-100 and -101, 15-23-41 and -42, and 34-26-2. The appellant argues that his Sixth Amendment right of confrontation outweighs the statutory privilege and the victim's right to confidentiality. A witness's claim of a statutory privilege may, under certain circumstances, violate a defendant's Sixth Amendment rights of confrontation and cross-examination. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); United States v. Lindstrom, 698 F.2d 1154 (11th Cir.1983); Ex parte Lynn, 477 So.2d 1385 (Ala.1985); Kirby v. State, 581 So.2d 1136 (Ala.Cr.App. 1990); Thornton v. State, 527 So.2d 143 (Ala.Cr.App.1987), cert. quashed, 527 So.2d 146 (Ala.1988).
"The issue presented here is whether, under the circumstances of this case, denial of access to the privileged records deprived the appellant of his right of confrontation. We adhere to the principle that the opportunity for cross-examination is central to the right of confrontation. However, this does not mean that records of this type must be disclosed simply because they relate to a key state's witness whose claimed lack of credibility is the foundation of the defense. There are strong public policy reasons for maintaining the confidentiality of such records. In this state, where a party's right of discovery has come into conflict with a communication that is the subject of a statutory privilege communication, the courts have decided the issue on the facts of each particular case or, in other words, on a case-by-case basis. Ex parte Rudder, 507 So.2d 411 (Ala.1987); Kirby v. State. The reasons for confidentiality must in each case be weighed against the defendant's right to bring to the jury's attention facts affecting the witness's credibility. Davis v. Alaska. Access to such records must be left to the discretion of the trial court, which is better able to assess the probative value of the evidence contained in the records as it relates to the particular case before the court, and to weigh that value against the interest in the confidentiality of the records. In order to determine whether the records contain exculpatory or impeachment evidence that should be disclosed, the trial court of necessity must examine the records. That examination should be in camera. See Kirby v. State, where we suggested the procedure be used. The trial court should also make specific findings, and the privileged records should be made a part of the trial record for purposes of appeal. In this case, the trial court refused to order the production of the records for an in camera inspection and, thus, no examination was made.
"We find that there is sufficient evidence in the record to warrant an in camera examination by the trial court of the privileged records for the purpose of discovering whether disclosure of any material relevant to the issue of credibility of the witness is appropriate in this case. We, therefore, remand this cause to the trial court with instructions that that court conduct an in camera examination of the records ... pertaining to [the victim] and to determine if those records contain any exculpatory or impeachment evidence that would bear upon the question of the appellant's guilt and the credibility of [the victim]."
*374 676 So.2d at 948-49 (brackets and emphasis added). See also Kirby v. State, 581 So.2d 1136 (Ala.Crim.App.1990).
Similarly, here, we find that an in camera examination by the trial court of the privileged records is warranted in this case to determine whether those records contain any material relevant to the issue of T.H.'s credibility and whether disclosure of these records would have been appropriate in this case. T.H. claimed that the appellant raped her; the appellant's defense was consent. In his motion to compel production and at the hearing on the motion, the appellant alleged that attacking T.H.'s credibility was an essential part of his defense and that he believed T.H.'s mental-health records contained information relevant to her credibility. Because a central issue in this case was T.H.'s credibility, the trial court's statement during the second hearing that it should inspect the records before ruling on the appellant's motion was correct. However, as noted above, nothing in the record indicates that the trial court did, in fact, inspect the records, and those records are not included in the record on appeal for this Court's review.[2] Moreover, we note that the record indicates that the trial court denied the appellant's motion to compel the records in part because the appellant was not willing to waive his privilege with respect to similar records. However, as this Court pointed out in both Schaefer and Kirby, a claim of statutory privilege may, in some cases, violate a defendant's Sixth Amendment right to confrontation and cross-examination and the determination whether the privilege outweighs a defendant's Sixth Amendment rights is a balancing processthe reasons for the privilege must be weighed against the defendant's right to present evidence affecting the credibility of witnesses. A defendant's decision not to waive his statutory privilege is not a part of this balancing process and cannot be used against a defendant in determining whether the privilege outweighs the right to confrontation and cross-examination.
We do not hold that an in camera inspection of privileged documents is always necessary before a trial court denies a defendant's motion to compel production. Rather, we hold that when a defendant sufficiently alleges that privileged documents may contain evidence relevant and material to an issue in the case, the trial court should inspect the documents in camera before ruling on the defendant's motion. We note that in Schaefer, this Court stated that there was "sufficient evidence in the record to warrant an in camera examination" of the requested records. 676 So.2d at 949 (emphasis added). That language was not meant to impose a burden on a defendant to actually present "evidence" in order to obtain production of privileged documents; rather, it was *375 meant to place the burden on a defendant to sufficiently allege the relevance and materiality of the evidence that he or she is requesting be produced.
We agree with the appellant that the trial court in this case abused its discretion in refusing to examine T.H.'s mental-health records before denying the appellant's motion to compel the production of those records. Therefore, we remand this case to the trial court for it to conduct an in camera inspection of T.H.'s mental-health records and to make specific findings regarding (1) whether the records contain material relevant to T.H.'s credibility, and, (2) if so, whether, after weighing the reasons for the privilege against the appellant's right to confrontation and cross-examination, disclosure would have been appropriate in this particular case. A return to remand shall be filed with this Court within 56 days of the release of this opinion. The return to remand shall include the trial court's written findings, a transcript of any proceedings conducted on remand, and T.H.'s mental-health records.
We pretermit discussion of the appellant's other issues pending the trial court's return to our remand order.
REMANDED WITH DIRECTIONS.[*]
McMILLAN, P.J., and COBB and BASCHAB, JJ., concur. WISE, J., dissents, without opinion.
NOTES
[1] See also Rule 503, Ala.R.Evid.
[2] The State argues on page 5 of its brief to this Court that "[t]he trial judge on a motion to reconsider stated that there was nothing in the records to suggest that the person was suffering from an emotional mental defect that would materially affect the accuracy of the testimony or the ability to relate the truth. (Hearing R. 13)." The State also argues on page 6 of its brief: "Here, the court reviewed the records deciding that there was nothing that would relate to or affect the victim's credibility.... The trial court is better able to assess the probative value of the evidence contained in the records as it relates to the particular case before the court and to weigh that value against the interest in the confidentiality of the records." We can find no statement by the trial court on that page referenced by the State suggesting that the trial court had reviewed T.H.'s mental-health records. It does appear that the trial court may have made a reference to the records discussed in Schaefer, because it stated, "Furthermore, there is nothing in the records to suggest that DIF...." The victim in Schaefer was referred to in the opinion as "D.L.F."
[*] Note from the reporter of decisions: On November 15, 2002, on return to remand, the Court of Criminal Appeals affirmed, without opinion.